UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA MARY PITTS,                              Case No. 14-12204

              Plaintiff,                    Gershwin A. Drain
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,      Michael Hluchaniuk
                                                 United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 15)**

## I.   PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On June 4, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gershwin A. Drain referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for period of disability, disability insurance benefits and supplemental security income. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 14, 15). Plaintiff also filed a reply in support of her motion for summary judgment. (Dkt. 16).

2:14-cv-12204-GAD-MJH   Doc # 18   Filed 08/06/15   Pg 2 of 29   Pg ID 731

A.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on October 12 and 14, 2011. (Dkt. 11-2, Pg ID 50). The claims were initially disapproved by the Commissioner on January 12, 2012. *Id.* Plaintiff requested a hearing and on December 14, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ), Thomas L. English, who considered the case *de novo*. (Dkt. 11-2, Pg ID 67-97). In a decision dated January 24, 2013, the ALJ found that plaintiff was not disabled from the amended disability onset date of April 15, 2009 through the date of decision. (Dkt. 11-2, Pg ID 47-61). Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits, the Appeals Council, on April 24, 2014, denied plaintiff's request for review. (Dkt. 11-2, Pg ID 40-45); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).[1]

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 45 years old on the alleged disability onset date.  (Dkt. 11-2,

Pg ID 60).  Plaintiff's relevant work history included work as a home attendant,

production machine tender, and numerical control machine operator.  (Dkt. 11-2,

Pg ID 59).  The ALJ applied the five-step disability analysis to plaintiff's claims

and found at step one that plaintiff had not engaged in substantial gainful activity

since the alleged onset date.  (Dkt. 11-2, Pg ID 52).  At step two, the ALJ found

that plaintiff's asthma, degenerative changes of the spine, mild scoliosis, thyroid

disorder, gastroesophageal reflux disease, mood disorder, posttraumatic stress

disorder, and cannabis abuse were "severe" within the meaning of the second

sequential step.  *Id.*  At step three, the ALJ found that plaintiff's severe

impairments did not meet or equal a listed impairment. (Dkt. 11-2, Pg ID 60-61).

The ALJ found that plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform medium work as defined in 20 CFR 404.1567(c)
> and 416.967(c) and delineated here:  She can lift, carry,
> push and pull 50 pounds occasionally and 25 pounds
> frequently; she can each sit, stand, and walk, 6 hours in
> an 8-hour workday; she can frequently climb ramps and

stairs; she can occasionally crawl, crouch, kneel, stoop,
or climb ladders and scaffolds; she cannot work around
unprotected heights or moving mechanical parts; she
cannot work in an area with concentrated exposure to
fmnes, dusts, gases, poor ventilation, humidity and
wetness; she is limited to perform simple, routine and
repetitive tasks; she is limited to jobs that involve simple
work-related decisions.

(Dkt. 11-2, Pg ID 56-57). At step four, the ALJ found that plaintiff was unable to

perform her past relevant work. (Dkt. 11-2, Pg ID 59). At step five, the ALJ

denied plaintiff benefits because she could perform a significant number of jobs

available in the national economy. (Dkt. 11-2, Pg ID 60).

B.    Plaintiff's Claims of Error

SSR 96-8p states that in assessing RFC, non-exertional capacity, such as

limitations resulting from mental impairment, "must be expressed in terms of

work-related functions." Regarding mental impairments, SSR 96-8p states that

"[w]ork-related mental activities generally required by competitive, remunerative

work include the abilities to: understand, carry out, and remember instructions; use

judgment in making work-related decisions; respond appropriately to supervision,

co-workers and work situations; and deal with changes in a routine work setting."

Plaintiff contends that the ALJ's limitation of her to only being able to perform

simple, routine and repetitive tasks and jobs that involve simple work-related

decisions is inadequate to account for the mental limitations imposed by Ms. Lem

4

and Dr. William D. Brooks, Ed.D., and also by plaintiff's therapist, Denise Farmer, LMSW.  (Tr. 471-483; 558-594); *see Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010).  According to plaintiff, the evidence of record documents that she is disabled and unable to perform the basic mental demands of unskilled work as described in SSR 85-15 and the mental demands of sedentary work as described in SSR 96-9p, warrant an award of benefits.

Regarding most of these requirements, Ms. Farmer, after evaluating her mental status on March 22, 2012 and conducting therapy sessions on March 28, 2012, April 11, 2012 and April 18, 2012, (Tr. 477-483) opined that she had substantial limitations in most of the stated mental activity areas in a Mental Residual Functional Capacity Evaluation form.  (Tr.  471-476).  Plaintiff points out that the limitations Ms. Farmer opined that plaintiff had in April 2012 were consistent with her evaluation in March 2012 when she scored plaintiff's GAF at 50 or severe mental limitation including the inability to keep a job.  Ms. Farmer revisited her opinions on November 14, 2012, after more than 20 additional therapy sessions and reaffirmed the limitations in a letter.  (Tr. 558).  Ms. Farmer also observed:  Client demonstrates being easily overwhelmed.  She has also demonstrated significant disassociative symptoms and scored 35 on the Disassociative Experiences Scale-II, which indicates PTSD.  (Tr. 474).  According to the VE's testimony, these limitations render plaintiff unemployable and

therefore disabled.  Plaintiff also contends that while Ms. Lem's and Dr. Brooks'

remarked that plaintiff appeared capable of managing simple and repetitive tasks

but did not seem motivated to complete even simple tasks, this opinion does not

support the ALJ's RFC determination that plaintiff can perform simple repetitive

tasks because her mental disorder gives rise to the lack of motivation.  In *Branham*

*v. Gardner*, 383 F.2d 614, 633 (1967), the court held that a claimant's lack of

motivation to work would not support an unfavorable decision if the lack of

motivation resulted from a mental impairment.  Had the ALJ given Ms. Farmer's

opinions the weight to which they were entitled, plaintiff maintains that she would

have been found disabled.

The Regulations specifically provide that evidence from "other sources",

including chiropractors and therapists, is used "to show the severity of your

impairment(s) and how it affects your ability to work."  20 C.F.R. §§ 404.1513(d),

416.913(d).  The Regulations further state that "[o]ther sources include, but are not

limited to" therapists.  According to plaintiff, the ALJ almost entirely disregarded

the opinion and the report of plaintiff's therapist, Ms. Farmer.  (Tr. 27).  Dr.

Chinedu P. Onwere, MD, psychiatrist, on March 29, 2012, diagnosed plaintiff

with:

> Assessment: Symptoms and clinical course are
> suggestive of depressive disorder NOS diagnosis,
> complicated by a personality disorder NOS diagnosis. I

cannot completely r/o a bipolar disorder NOS diagnosis.

(Tr. 493-495). Plaintiff was diagnosed by a psychiatrist and treated by a therapist. According to plaintiff, this is the usual way psychiatric medicine is practiced today especially for persons in plaintiff's financial condition. Plaintiff contends that the ALJ neglected Ms. Farmer's opinions almost entirely in his haste to find against plaintiff's assertions of disability from her symptoms of depression and PTSD. He did not evaluate the strength of her knowledge of the effects of plaintiff's mental conditions as she saw them weekly for many weeks and as diagnosed by plaintiff's treating psychiatrist.

According to plaintiff, SSR 06-03p guarantees her that:

> Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:
>
> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s), and Any other factors that

7

tend to support or refute the opinion.

The ALJ just did not give the treating "other source" opinion sufficient weight and dismissed her opinion without the analysis established in SSR 06-03p.  Plaintiff contends that Ms. Farmer's opinions are consistent with the GAF scores of the CE Lem and Brooks; Farmer is a mental health therapy specialist who works with Dr. Onwere and had conducted more than two dozen therapy sessions with plaintiff, the records of which did not show recovery on plaintiff's part.  Rather, plaintiff showed only "moderate" progress in her recovery before Ms. Farmer's Mental RFC assessment.  (Tr. 471-483)

Thereafter, the same progress was noted after each therapy session.  (Tr. 558-594).  Even though plaintiff continued to work on her symptoms from depression and PTSD, success had not been achieved by the time of the hearing and her sessions were continuing.  In *Cole v. Astrue*, 661 F.3d 931 (2011), the ALJ erred by failing to mention a treating mental health counselor's opinion and by not giving any reason for not crediting her opinion.  A mental health counselor is a valid "other source" under 20 C.F.R. § 404.1513(d)(1), despite not being listed in the regulatory definition of an "acceptable medical source" under 20 C.F.R. § 404.1513(a).  The court acknowledged that a mental health counselor's opinion is entitled to consideration due to her expertise and long-term relationship with the claimant.  The court added:

8

> Mr. Cole's situation is not unique; many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such counselors. The practical realities of treatment for those seeking disability benefits underscore the importance of addressing the opinion of a mental health counselor as a valid "other source" providing ongoing care.

*Cole v. Astrue*, 661 F.3d at 939 n. 4. In *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378-379 (2013), the court cited Social Security Ruling 06-03p for the principle that although therapists may not qualify as "acceptable medical sources" under Social Security regulations, an ALJ must consider all relevant evidence in the case record. According to the ruling, although the regulatory factors for weighing opinions from acceptable medical sources found in 20 C.F.R. § 404.1527(c) do not strictly apply to opinions of providers who are not acceptable medical sources, they "represent basic principles that apply to the consideration of all opinions from medical sources ... who have seen the individual in their representative capacity." Thus, plaintiff maintains that it was error for the ALJ to ignore large portions of the record consisting of extensive treatment notes from the therapist at the treating physician's medical practice center without explanation. The notes were relevant evidence supporting the treating physician's opinion, which were mischaracterized by the ALJ.

9

C.    The Commissioner's Motion for Summary Judgment

Plaintiff alleges that the ALJ's RFC is insufficient because the ALJ did not fully credit the opinion of Ms. Farmer, her therapist.  According to the Commissioner, because substantial evidence supports the ALJ's decision, the Court should affirm the ALJ's decision.  The medical opinion of a treating source is entitled to "controlling weight" only if both of the following two elements are satisfied: (1) it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) it is "not inconsistent with the other substantial evidence in [the] case record."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir 2009) (quotation omitted).  In the event that both of these elements are not satisfied, "'[i]t is an error to give an opinion controlling weight.'"  *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2); *see e.g.*, *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").  The Commissioner points out, however, that Ms. Farmer is not a physician, and her opinion cannot be granted controlling weight, but may be used to determine the severity of Plaintiff's impairments.  *See* SSR 06-03p, 2006 WL 2329939, at * 2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. . .

10

. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). Although the ALJ must consider many factors in weighing the opinion of an "other source," the ALJ need only generally explain the weight given to such opinion. *Id*. at *6 ("Although there is a distinction between what an adjudicator must consider and what the [ALJ] must explain in the . . .decision, the [ALJ] generally should explain the weight given to opinions from these 'other sources' . . .").

According to the Commissioner, the ALJ properly discounted Ms. Farmer's opinion because it conflicted with her treatment notes that indicated plaintiff made significant progress while receiving medication and therapy. (Tr. 27); *see Irvin v. Soc. Sec. Admin.*, 573 Fed. Appx. 498, 501, (6th Cir. 2014) (holding that the ALJ properly discounted a treating physician's opinion because it was contradicted by evidence showing the claimant's condition improved with medication and treatment); *Detzler v. Comm'r of Soc. Sec.*, 2013 WL 6587848, at *3 (E.D. Mich. 2013) (holding than an ALJ properly discounted the opinions of a doctor and nurse practitioner because the opinions were internally inconsistent, and "failed to account for the treatment notes recounting Plaintiff's improvement"). The Commissioner points out that Ms. Farmer noted several times that plaintiff was making moderate progress. (Tr. 477, 479, 559-64, 567-72, 573-75, 577, 579-80,

11

583, 585).  Ms. Farmer also noted that plaintiff was stable (Tr. 571, 579, 583), demonstrated better control over her emotions (Tr. 563, 564, 567, 568, 569, 570, 573, 575, 577), used positive coping skills (Tr. 561, 562, 567, 573, 575, 577, 585), or otherwise noted that therapy was helping her mood and relations with others. (Tr. 477, 479, 559, 567, 569, 573, 579).  In addition, plaintiff reported that her medication was effective.  (Tr. 501).  The Commissioner maintains that this evidence of progress conflicts with the extreme limitations contained in Ms. Farmer's opinions.  (Tr. 471-76, 558).

In addition, the Commissioner asserts that the ALJ properly discounted Ms. Farmer's opinions as inconsistent with the record (Tr. 27) because Ms. Farmer failed to record the limitations contained in her opinion.  *See e.g.*, *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 177 (6th Cir. 2009) (upholding adjudicator's decision to discount treating physician's opinion on ground that, inter alia, it was "inconsistent with his treatment notes"); *Essary v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 662, 667 (6th Cir. 2004) (upholding adjudicator's decision to discount treating physician's opinion on ground that, inter alia, "his failure to catalog [certain] restrictions in his treatment notes . . . calls into question whether [claimant] was in fact so restricted").  For example, Ms. Farmer's opinion indicates marked losses in concentration, but her records do not consistently record such a limitation.  (Tr. 473).

12

The Commissioner also argues that ALJ properly discounted the limitations in social functioning contained in Ms. Farmer's opinions and Dr. Brooks' opinion that plaintiff's impairments would interfere with her ability to work effectively with others.  (Tr. 469, 474).  Dr. Brooks made his opinion prior to Ms. Farmer's treatment of plaintiff.  (Tr. 469).  Subsequently, plaintiff reported that her medication was effective.  (Tr. 501).  Ms. Farmer's treatment notes indicate that plaintiff was friendly (Tr. 477, 479, 559-64, 567-72, 573-75, 577, 579-80, 583, 585), stable (Tr. 571, 579, 583), demonstrated better control over her emotions (Tr. 563, 564, 567, 568, 569, 570, 573, 575, 577), used positive coping skills (Tr. 561, 562, 567, 573, 575, 577, 585), or otherwise noted that therapy was helping her mood and relations with other.  (Tr. 477, 479, 559, 567, 569, 573, 579).  According to the Commissioner, the progress made by plaintiff while under treatment supports the ALJ's decision to not include a limitation with respect to social functioning in the RFC.  (Tr. 25); *see Irvin*, 573 Fed. Appx. at 501, (6th Cir. 2014) (holding that the ALJ properly discounted a treating physician's opinion because it was contradicted by evidence showing the claimant's condition improved with medication and treatment); *Detzler*, 2013 WL 6587848, at *3 (E.D. Mich. 2013) (same).  Further supporting the ALJ's decision, Plaintiff reported that she took care of her grandchildren (Tr. 43), had no problems getting along with others (Tr. 199), and smoked marijuana with her friends weekly.  (Tr. 45).

13

Plaintiff argues that Dr. Brooks' observation that plaintiff had the ability but not the motivation to perform simple tasks supports a finding that she is disabled. (Tr. 469). Again, the Commissioner points out that Dr. Brooks' opinion predated treatment, which showed plaintiff's condition significantly improved, and the ALJ properly discounted it. (Tr. 477, 479, 559-64, 567-72, 573-75, 577, 579-80, 583, 585); *see Irvin*, 573 Fed. Appx. at 501, (6th Cir. 2014); *Detzler*, 2013 WL 6587848, at *3 (E.D. Mich. 2013). The Commissioner also points out that Ms. Farmer opined that plaintiff had only a mildly impaired ability to carry out simple tasks. (Tr. 473). Plaintiff reported that her impairments did not affect her memory or her abilities to complete tasks, or follow instructions. *Id*. In addition, plaintiff's hours of crocheting to create afghans for her grandchildren demonstrated that she has the motivation to perform simple tasks. (Tr. 562).

Plaintiff also argues that her GAF score of 50 support her claims of disability. The Commissioner acknowledges that a GAF score of 50 indicates serious symptoms such as suicidal ideation, or any serious impairment in social, occupational, or school functioning, such as having no friends or being unable to keep a job. Diagnostic and Statistical Manual of Mental Disorders 4th Ed. 34 (4th Ed. 2000) (DSM-IV). However, a "GAF score is not particularly helpful by itself" in determining disability. *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. Appx. 681, 684 (6th Cir. 2011). GAF scores of 50 are not per se disabling. *See Nelson v. Comm'r*

14

*of Soc. Sec.*, 195 Fed. Appx. 462 (6th Cir. 2006) (GAF of 50 not disabling). According to the Commissioner, the ALJ's failure to discuss plaintiff's GAF scores is harmless error where the ALJ's decision is otherwise supported by substantial evidence. *See Keeler v. Comm'r of Soc. Sec.*, 2013 WL 133557, at *1 (6th Cir. 2013) ("Further, the ALJ was not required to consider claimant's GAF scores, and, in any case, the scores [50 and 52] were not sufficient to undermine the ALJ's analysis") (citations omitted); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 416 (6th Cir. 2006) ("Any failure to reference Global Assessment Functioning scores or to compare different scores attributed to the same subject, without more, does not require reversal.").

Finally, plaintiff cites *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011) for the proposition that an ALJ may not disregard the opinion of an other source without any analysis. The Commissioner maintains that the ALJ did not discount Ms. Farmer's opinions without any analysis; rather, his analysis showed that he discounted her opinion because they were not supported objectively, were internally inconsistent, and were contradicted by substantial evidence. (Tr. 27). The ALJ specifically mentioned the progress contained in Ms. Farmer's treatment notes as a reason to discount her opinions. *Id*. Thus, the Commissioner maintains that the ALJ satisfied the requirements of 20 C.F.R. § 404.1527; *see Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) ("Although the

regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision contain [good reasons and] not an exhaustive factor-by-factor analysis"); *Infantado v. Astrue*, 263 Fed. Appx. 469, 474 (6th Cir. 2008) (affirming denial of benefits despite adjudicator's failure to explicitly cite regulatory factors); SSR 06-3p, available at 2006 WL 2329939, at *4-6 ( "[n]ot every factor for weighing opinion evidence will apply in every case"; "there is a distinction between what an adjudicator must consider and what the adjudicator must explain" in her decision).

      D.    <u>Plaintiff's Reply</u>

In reply, plaintiff maintains that the ALJ's RFC is not supported by substantial evidence because, although the ALJ found that plaintiff had severe impairments of mood disorder and PTSD, he did not sufficiently limit her ability to perform work activities.  He did not do so because he failed to appropriately understand and apply the PTSD and depression symptoms plaintiff experiences on and off and he also failed to appropriately weigh the insight of plaintiff's mental health therapist.  The Commissioner claims that the ALJ appropriately gave the most knowledgeable health care provider's opinions sufficient weight ("I give little weight to the assessments of social worker, Farmer...") (Tr. 27) because: 1) it conflicted with her treatment notes, 2) Ms. Farmer failed to record the limitations contained in her opinion, 3) she took care of her grandchildren, and otherwise had

16

a functioning but limited social life.  Dr. Chindeu Onwere, D.O., a psychiatrist at

Center for Family Health first consulted with plaintiff because of the need for

diagnostic clarification and treatment recommendations to address her mental

health problems.  He examined plaintiff on March 29, 2012 and concluded that her

mental problems included depression and a personality disorder.  (Tr. 493-494)

She had been banned from contact with her grandchildren by their mother, her

daughter (Tr. 493) which is just contrary to one of the reasons that the ALJ

ascribed to diminish the weight given to her therapist's opinions of her limitations.

Dr. Onwere prescribed mental therapy to help plaintiff's depression and

personality disorder.  That was provided by Ms. Farmer, about two months later in

May 2012 and was ongoing in November 2012, just before the hearing in

December 2012.  (Tr. 558-594).

      Ms. Farmer was concerned about her patient's mental health and her

reaction to the medication and other remedial steps in which plaintiff was

engaging, and recorded her work related limitations only twice when requested to

do so, in April 2012 (Tr. 471-476) she authored a Mental RFC report and on

November 2012 Ms. Farmer reasserted her opinions of her patient's progress in

therapy by reaffirming her earlier limitations.  (Tr. 558).  In spite of Ms. Farmer's

comments of "moderate progress" that were included in her treatment notes after

every session, plaintiff maintains that she had not appreciably improved in her

ability to function in the workplace even though she was compliant with both therapy and her medication.

According to plaintiff, it appears that the ALJ reached a conclusion and then picked through the medical evidence of record in order to attempt to justify it. He was not successful in that attempt because his reasons for discrediting the therapist's opinions are not born out by a careful review of the evidence. For instance, plaintiff says that the intensity and frequency of the therapy sessions require more than four days per month of attendance which would preclude full time competitive work. (Tr. 62). In addition, Ms. Farmer and consultive examiners Kimberly Lem, MA and Dr. William D. Brooks, all graded Ms. Pitts's GAF at 50 or that she is suffering from a severe mental disease that seriously affects her ability to function. According to plaintiff, all of these signals, read together, support Ms. Farmer's opinions of limitation.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

19

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

20

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe

22

impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

23

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Under Titles II and XVI: Considering Opinions And Other Evidence From Sources Who are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental And Nongovernmental Agencies, SSR 06-03p, 2006 WL 2329939 (August 9, 2006), the Commissioner will consider all available evidence in an individual's case record, including evidence from "acceptable medical sources" and "other sources." It is true that only "acceptable medical sources" as defined under 20 C.F.R. § 416.913(a) can provide evidence which establishes the existence of a medically

24

determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. Thus, information from such "other sources" cannot establish the existence of a medically determinable impairment; however, such information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). SSR 06-03p further provides that ALJs "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the reasoning. *Id*.

The undersigned agrees with the Commissioner that the ALJ fully evaluated Ms. Farmer's opinion and that the weight assessed is supported by substantial evidence because it conflicted with her treatment notes that indicated plaintiff made significant progress while receiving medication and therapy. Indeed, Ms. Farmer opined that plaintiff was making moderate progress. (Tr. 477, 479,

25

559-64, 567-72, 573-75, 577, 579-80, 583, 585), she was stable (Tr. 571, 579, 583), demonstrated better control over her emotions (Tr. 563, 564, 567, 568, 569, 570, 573, 575, 577), used positive coping skills (Tr. 561, 562, 567, 573, 575, 577, 585), or otherwise noted that therapy was helping her mood and relations with others. (Tr. 477, 479, 559, 567, 569, 573, 579). In addition, plaintiff reported that her medication was effective. (Tr. 501). The undersigned agrees with the Commissioner that this evidence of progress conflicts with the extreme limitations contained in Ms. Farmer's opinions.

The undersigned also concludes that the ALJ's treatment of Dr. Brooks' opinion is supported by substantial evidence. Dr. Brooks opined that plaintiff's impairments would interfere with her ability to work effectively with others. (Tr. 469, 474). However, this opinion was rendered before Ms. Farmer's treatment of plaintiff. (Tr. 469). Subsequently, plaintiff reported that her medication was effective. (Tr. 501). Ms. Farmer's treatment notes indicate that plaintiff was friendly (Tr. 477, 479, 559-64, 567-72, 573-75, 577, 579-80, 583, 585), stable (Tr. 571, 579, 583), demonstrated better control over her emotions (Tr. 563, 564, 567, 568, 569, 570, 573, 575, 577), used positive coping skills (Tr. 561, 562, 567, 573, 575, 577, 585), or otherwise noted that therapy was helping her mood and relations with other. (Tr. 477, 479, 559, 567, 569, 573, 579). The undersigned agrees with the Commissioner that the progress made by plaintiff while under

26

treatment supports the ALJ's decision to not include a limitation with respect to social functioning in the RFC.  Notably, Ms. Farmer opined that plaintiff had only a mildly impaired ability to carry out simple tasks.  (Tr. 473).  Plaintiff reported that her impairments did not affect her memory or her abilities to complete tasks, or follow instructions.  *Id*.  Thus, the ALJ's conclusion that plaintiff could perform simple, routine and repetitive tasks and jobs that involve simple work-related decisions is supported by substantial evidence.

The parties are in disagreement over the meaning and weight to be given to any of plaintiff's GAF scores.  Courts in this district do not accord controlling weight to GAF scores.  *Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277 *9 (E.D. Mich. 2014).  In fact, the Sixth Circuit has held that an ALJ's failure to refer to a GAF score does not make his or her RFC analysis unreliable.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (noting that a GAF score is a subjective determination); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006) (concluding that low GAF scores failed to show that the ALJ's decision was not supported by substantial evidence, because, in part, the court was

not "aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"). The undersigned finds no basis to reverse the decision of the ALJ based on the treatment of plaintiff's GAF scores.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 6, 2015                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 6, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov